JOHN W. HODGES v. W. H. WILKINSON.

*Assignment—Chattel Mortgage—Evidence—Burden of Proof—
Sale—Warranty—Possession.*

1. A warranty of title is implied in sales of chattels; this implication arises upon proof of sale, and thereupon the burden is cast upon the party denying the warranty, or resisting a recovery upon it, to show any special agreement which will relieve him from the liability.

2. It is not essential to a recovery in an action upon an implied warranty in the sale of a chattel to show that the plaintiff has been deprived of possession under legal process; it is sufficient if he shows the paramount title is in another who has acquired possession. The burden of proving the true title in another is upon the plaintiff.

3. The assignee of a chattel mortgage acquires an interest in the debt secured and the property pledged, which will be protected in Courts of law, as well as in Courts of equity; such assignment may be either with or without seal; it need not be registered, and may be proved as any other endorsement.

4. In the trial of an action upon an implied warranty in the sale of a horse, it was in evidence that the true owner had brought suit against plaintiff for possession, and upon claim and delivery proceedings had been put into possession, but the cause was still pending: *Held*, (1) The record of that suit was competent evidence to show possession in the true owner; and (2), in connection with other circumstances, to show the paramount title in him.

APPEAL from Justice of the Peace, tried before *Brown, J.,* and a jury, at Fall Term, 1891, of Beaufort Superior Court.

The pleadings were oral. The contentions of the parties on the trial in this Court were as follows:

The plaintiff alleged that he had exchanged a mule with the defendant for a horse; that the defendant impliedly warranted the title to said horse, and that there has been a breach of said warranty; that at the time of said exchange there was a valid outstanding mortgage on said horse, unknown to plaintiff; that the quiet possession of the plaintiff of said horse had been disturbed; that the horse had been taken by one H. W. Wahab, by virtue of said mortgage; that the plaintiff had been endamaged to the amount claimed in the writ.

The defendant denied said allegations, and, in particular, denied that said Wahab was the legal owner of said mortgage, or that there was anything due thereon, or that there had been any legal eviction, or any breach of the alleged warranty, and contended further that a suit was pending in this Court wherein said Wahab is plaintiff, and the said John W. Hodges, the plaintiff herein, is defendant, wherein said horse was taken by said Wahab, the plaintiff therein, under claim and delivery proceedings, which suit has not terminated, and that this action cannot be maintained by Hodges until after it is terminated

There was much conflicting testimony introduced by plaintiff and defendant.

The entire record in the action of *H. W. Wahab* v. *John W. Hodges,* including the claim and delivery papers, was also introduced.

The material portions of the charge were as follows:

*First issue.*—" That if defendant exchanged a horse for the mule with the plaintiff, and traded the horse to the plaintiff as his, the defendant's horse, if nothing else appeared, the law implies a warranty of title upon the part of the defend-

ant. But this warranty is an implied warranty. There is no evidence of an express warranty in this case.

"While the law implies a warranty of title when the vendor sells chattel property as his own, yet such implication may be repelled by the words or statements of the vendor as is claimed by defendant in this case. If Wilkinson stated to the plaintiff Hodges at the time of the trade, speaking in respect to the horse, 'that he would not warrant anything,' then that is a refusal to warrant at all and you should answer first issue, No. But if you believe Wilkinson traded the horse, and nothing further,was said or claimed by plaintiff, then you will answer first issue, Yes. The burden of proof is on defendant to repel the implication of warranty. If the plaintiff asked Wilkinson, 'Will you warrant this horse to be sound?' and the defendant said he would not, and nothing more was said, this would not be sufficient to repel implied warranty of title. The defendant must have indicated to the plaintiff that he refused to warrant title."

*Second issue.*—"Has there been a breach of the covenant of warranty? The warranty of title implied by the law in the sale of personal chattels is a covenant for the quiet enjoyment and possession. Therefore, before the plaintiff can establish a breach of the alleged covenant of warranty, the burden of proof is on the plaintiff to show by a preponderance of evidence that his possession of the horse has been disturbed, either by lawful process or by some one holding the paramount true title to the horse.

"The plaintiff has undertaken to show both a legal eviction or seizure by legal process, and further, that the horse was taken by H. W. Wahab, holding a paramount superior title to Wilkinson and Hodges. The plaintiff has put in evidence the record in the case of *H. W. Wahab* v. *John W. Hodges*

"There is no final judgment of the Court in the suit, and if there was no other evidence the above would be insuffi-

cient to establish Wahab's superior claim, and would not be
sufficient evidence of a breach of the covenant of warranty.
The plaintiff undertakes to go further and show as a matter
of fact that at the time of the trade H. W. Wahab held a
valid mortgage on the horse, and that he took him by virtue
of his mortgage.

"Upon this branch of the case the Court charges that, if
you believe that W. H. Green owned this black horse before
Wilkinson got him, and had executed a mortgage on him,
which is in evidence, and was a valid lien on said horse at
date of the trade, and that said mortgage was due and unpaid
and became the property of Wahab, and that Wahab took
the horse from Hodges by virtue of such mortgage, then
there has been a breach of warranty, and you should answer
second issue, Yes.

"It is true, that any defense is open to Wilkinson in this
action against the validity of Wahab's claim that was open
to Hodges in the suit Wahab brought against him, and,
therefore, it is incumbent on plaintiff to show that at the
time Wilkinson traded him the horse the mortgage was a
valid lien on him, was unpaid, and that the horse has been
taken from him by virtue of it and by the owner of it."

There was a verdict and judgment thereon for plaintiff,
and defendant appealed.

*Mr. C. F. Warren*, for plaintiff.
*Mr. J. H. Small*, for defendant.

AVERY, J.: The warranty of a title implied in every sale
of a chattel has been declared by this Court to be in effect a
covenant for quiet enjoyment. *Cowan* v. *Silliman*, 4 Dev.,
46; *Webster* v. *Laws*, 89 N. C., 224. The distinction drawn
by the Supreme Court of Kentucky between the breaches of
express and implied warranties of personal property (*Scott* v.
*Scott*, 2 Marsh, 218; *Tipton* v. *Triplett*, 1 Metcalf, 570) has not

been generally recognized by other Courts of this country, (*Gross* v. *Keesske*, 41 Cal., 111; Rawle on Cove., 5th ed., § 60) though at least one Court and text-writers of the highest respectability have given their sanction to it. *Metheny* v. *Mann*, 73 Mo., 677; 5 Louis R. & R., § 2379, page 3971.

If the question had been left an open one, however, strong reasons, well supported by authority, might be adduced in favor of the contention that covenants of warranty of the title to chattels, whether express or implied, are analagous rather to the personal covenant that the grantor is seized of land, has full right to convey it, and that the land is free from incumbrances, than to the covenants of warranty and quiet enjoyment, which run with the land, and that a breach is created and the right of action accrues at the time of the sale, if the title of the seller is then defective. *Perkins* v. *Whelan*, 116 Mass., 542; *Harrington* v. *Murphy*, 109 Mass., 299.

But it seems to be settled by the decisions of this Court that it is not an essential prerequisite to recovery on the covenant of warranty or quiet enjoyment in a deed for land even that the plaintiff should show that he has been actually evicted under legal process. *Parker* v. *Dunn*, 2 Jones, 203. If he has not been so evicted, yet if he show that he has yielded the possession to the owner by title paramount, or that the lands being unoccupied, such true owner has entered and acquired possession, it is sufficient evidence of a breach of the warranty. *Hodges* v. *Latham*, 98 N. C., 243; *Duvall* v. *Craig*, 1 Wheat., 45; *Read* v. *Staton*, 3 Hay., (Tenn ) 159; *Kellogg* v. *Plott*, 33 N. J. L., 332; Greenleaf on Ev., § 244. Proof of "the existence of a better title with an actual possession in another under it," is equivalent to evidence of an eviction (*Grist* v. *Hodges*, 3 Dev., 200) and the plaintiff will be relieved of the burden of showing a breach of the covenant which he takes upon himself in bringing the action when he adduces such proof of title as makes further contention probably useless. *Lee* v. *Gause*, 2 Ired., 444. The law does not require

one to do a vain thing. It is not incumbent on him to make himself a trespasser by an actual entry, nor to incur the useless expense and suffer the needless delay incident to bringing a hopeless suit. *Ibid.  Coble* v. *Wellborn*, 2 Dev., 388;. *Jackson* v. *Hanna*, 8 Jones, 188. The covenant of warranty is " subject to the same construction with a covenant for quiet enjoyment." *Herrin* v. *McEntyre*, 1 Hawks, 410. Actions on the warranty of title implied in the sale of personal property being then governed by the same rules as to the burden of proving the breach as those brought upon covenants for quiet enjoyment of lands (*Cowan* v. *Silliman, supra, Parker* v. *Dunn, supra, Webster* v. *Laws, supra*) it necessarily follows that it was sufficient for the plaintiff to show that Wahab had title to the horse in controversy by virtue of the mortgage when Wilkinson sold to the former, and that the horse had been seized and the possession of him acquired by Wahab by virtue of the warranty in the claim and delivery proceeding brought against the plaintiff. Upon principle it was no more necessary for Hodges to await the recovery of Wahab in the pending action, than it would have been to prosecute an unsuccessful suit against Wahab, had the latter acquired possession by bridling the horse while it was straying in the public highway and without objection from any person. *Coble* v. *Wellborn, supra*. The record as corrected by consent of counsel, makes no material change in the status of Hodges and Wahab when this action was brought. If Hodges had actually surrendered the horse to Wahab on demand, or if he agreed to give no trouble if claim and delivery proceedings should be instituted, still he had the burden on him of showing the title in Wahab with the advantage to the defendant of having the opportunity to meet and contradict, if he could, the testimony offered to prove title in him, which he could not have done in the suit already instituted against. Hodges. If there was a combination between Wahab and Hodges, the defendant's safety depended upon being allowed

on his own behalf, to dispute Wahab's claim to paramount title. If Wahab had such title, and it could be established despite the resistance of the defendant, it is but just that he should have the horse, and that Hodges should recover his value from the defendant. If the contest between Wahab and Hodges was but a sham battle, Wilkinson has no reason to complain that it was not acted out and that he has compelled Hodges to show in this action what Hodges had refused to make Wahab prove in that primarily brought and still pending. If Hodges offered testimony sufficient to satisfy the jury that Wahab had paramount title, then Wilkinson, by implication at least, must have falsely warranted the title to the horse and would have no ground of complaint if Hodges had surrendered possession to the true owner on being convinced of his right, and even with the assurance from Wahab that he would not insist on his rights in case the plaintiff should fail to recover in this action.

The plaintiff, in order to show paramount title as well as possession in Wahab, offered a chattel mortgage dated May 9, 1885, executed by W. H. Green to Harriet Cohen, which had been regularly proven and registered in Hyde county. After objection the Court admitted the chattel mortgage except the writing on the margin of it purporting to be an assignment of the mortgage by Harriet Cohen which plaintiff proposed to prove subsequently. The deed, except the endorsement, having been proved and registered in due form, it was premature to raise a question as to the effect of the deed or endorsement at that stage of the trial. *Vickers* v. *Leigh*, 104 N. C., 248; *Cox* v. *Ward*, 107 N. C., 507.

But it is contended for the appellant that the testimony offered, if competent, does not *prima facie* show title in Wahab, because the assignment did not divest it out of Harriet Cohen. Even where land was conveyed by absolute deed, and the grantee subsequently endorsed on the deed, " I transfer the within deed to A. B.," or " I relinquish all my right and title

to the within deed," it was declared by this Court that such endorsements, if supported by a valuable consideration, constituted contracts for reconveyance, which the Courts could enforce by a decree for specific performance. *Linker* v. *Long,* 64 N. C., 296; *Tunstall* v. *Cobb,* 109 N. C., 326; *Beattie* v. *Railroad,* 108 N. C., 429. Such endorsements, upon mortgage deeds conveying land, as do not purport to act upon the land or the mortgagee's interest in it, will not pass the legal interest or power of sale. *Dameron* v. *Eskridge,* 104 N. C., 621; *Williams* v. *Teachey,* 85 N. C., 402. But the assignee of a chattel mortgage acquires an "interest in the debt secured and the property pledged, which courts of law as well as courts of equity, will recognize." The effect of assigning the mortgage deed without transferring the note which it is executed to secure, says ANDERSON, J., in *Campbell* v. *Rich,* 60 N. Y., 214, is "to transfer to the assignee the property embraced in the mortgage as security for his advances." If the mortgagee assign the debt secured in a chattel mortgage before or after forfeiture, said SOUTH-ERFORD, J, in *Langdon* v. *Bush,* 9 Wendell, 80, the interest of the mortgagee passes to the assignee, and if the property be taken by a stranger, trespass must be brought by the assignee, not by the assignor. The principle involved, if not the precise question presented in this case, was passed upon by the Supreme Court of Michigan (Graves and Cooley concurring with MARTIN, J., in the opinion) in *Ellsworth* v. *Hall,* 48 Mich., 411, when that Court held that the assignee, under a *bona fide* mortgage, is entitled to the same protection as the mortgagee in an action of replevin, brought by a claimant of the goods. If Wahab would be entitled to the same protection as Harriet Cohen in the auxiliary proceeding of claim and delivery (which, as a substitute for replevin), he must, by virtue of the assignment, be considered the owner, in law and equity, of the property, until his debt is paid. The law, for reasons which it is useless to explain here, makes it essen-

tial that a deed for land, in order to pass the legal estate, should not only be signed, but sealed. Without a seal, a paper otherwise in the form of a deed of bargain and sale, does not pass the legal, but only the equitable estate. *Avent* v. *Arrington*, 105 N. C., 392. On the other hand, personal property passes by an assignment, either with or without seal, and where it is the purpose of the parties to transfer all of the rights of the mortgage, under a chattel mortgage, to another, there is no reason why an endorsement, like that made in this case on the instrument, should not be held to put the assignee, in law and equity, in the place of the assignor. *Kost* v. *Bender*, 25 Mich., 516; Jones on Ch. Mort., sections 506 to 510; *Barbour* v. *White*, 47 Ill., 154; *Moody* v. *Ellsbee*, 4 Richardson (S. C.), 21; *Gilchrist* v. *Patterson*, 18 Ark., 579.

The plaintiff first offered to prove by H. W. Wahab that he sent Dick Howard, a constable, to take possession of the horse, and upon objection being made to the competency of that testimony, the record of the action entitled *H. W. Wahab* v. *John W. Hodges* (the plaintiff in this action), then pending in the Superior Court of Beaufort County, was offered. This was the action in which the ancillary proceeding of claim and delivery was instituted, and the warrant was issued under which the seizure was made and the horse delivered to Wahab. It appeared from the record that no final judgment had been rendered. If the law has been correctly stated by us, it was clearly competent to introduce the record to show possession in Wahab under the process of the Court in connection with other testimony tending to prove that the paramount title was also in him. After the defendant objected to showing by parol how that possession was acquired, we cannot see upon what ground he could complain of the plaintiff for showing not only the actual possession, but the record of the judicial proceeding in which the warrant of seizure was issued. The lien of the chattel mort-

gage was created by registering the original instrument, and such registration was notice to the world of the existence of the lien. It was not material to the public whether the debt and property were transferred by the mortgagee. The purpose of the Legislature in passing the statute in reference to registration was to prevent the creation of secret liens which embarrass trade and tend to encourage fraud. There is no provision in our statute (*The Code*, § 1274) which requires assignments of chattel mortgages or the debts secured by them to be proven or registered; nor is there any good reason for enacting such a law, though it has been done in other States. The mortgage is declared "good to all intents and purposes" when registered according to law. No matter how often they may be assigned, they are still good to protect the interest of the holder of the debt.

Here it was competent to prove the signature of Harriet Cohen to the endorsement, "Value received, I hereby transfer this mortgage to H. W. Wahab," she being dead, just as it would have been to prove the execution of an assignment written on a separate and distinct piece of paper.

In view of all of the testimony on the subject, we think there was no ground for the complaint that the Judge in his charge assumed that the black horse was identified. All of the mortgagor's horses were conveyed in the deed, but according to all the witnesses who knew the animals, except Ed. Spencer, there was one black horse and only one. Spencer testified that the mortgagor had a mare and two horses all told, and that one of the horses was "a dark bay, and the other was darker still." It cannot be reasonably insisted that in testifying that a horse is darker than a dark bay, the witness meant to be understood as denying that the horse in dispute was what is known as a black horse, as other witnesses had stated. There was no such conflict in the testimony as to the identity of the horse, as to make it the duty of the Judge to leave the question to the jury.

111—5

The implication of warranty of title arises on proof of any sale of a chattel, and when the sale was shown the burden was upon a party denying the warranty and resisting a recovery growing out of it, to show some special agreement that the seller should be discharged from such liability.

Upon a review of the whole record, we think that the rulings of the Court as to the competency of testimony, and the portions of the charge that were excepted to, should be sustained.   There is no error.

Affirmcd.