Viola M. KOELLING, Fay L. Schlueter, Lola L. Vogt and Junia H. Mueller, (Plaintiffs) Respondents,

v.

RALPH ANDERSON LUMBER COMPANY, Inc., a Corporation, (Defendant and Third-Party Plaintiff) Appellant,

v.

The LEIWEKE ESTATE, INC., a Missouri Corporation, N. J. Boyd, Jr., Administrator of Estate of N. J. Boyd, Sr., Deceased, Leo Muscovalley, N. J. Boyd, Jr., etc., (Third-Party Defendants), Appellants.

No. 51285.

Supreme Court of Missouri,

En Banc.

July 12, 1965.

Harold D. Jones, Bock & Jones, New Madrid, for defendant and third-party plaintiff-appellant, Ralph Anderson Lumber Co.

Hal E. Hunter, Jr., New Madrid, for third-party defendant-appellant N. J. Boyd, Jr., Adm'r of Estate of N. J. Boyd, Sr., deceased.

Joseph B. Wentker, Robert V. Niedner, Niedner, Niedner & Moerschel, St. Charles, for respondents.

HYDE, Judge.

Action for conversion of logs cut from growing timber, on an island owned by plaintiffs, tried by the court without a jury. Plaintiffs had judgment for $7,250.00, from which defendant has appealed. Defendant (Ralph Anderson Lumber Company, Inc.) hereinafter called Anderson, as third party plaintiff, also asked judgment (if required to pay plaintiffs) against third party defendants, The Leiweke Estate, Inc., hereinafter called Leiweke, which sold the standing timber and Boyd, who as Leiweke's vendee, cut the timber and sold the logs to Anderson. Judgment was entered for Anderson on its third party petition for $2,000.00 against Lieweke and for Anderson for $5,250.00 against Boyd, from which Boyd has appealed. Leiweke defended in the trial court but has not appealed. Anderson claims the right to a judgment against Boyd and Leiweke for the full amount of any judgment awarded plaintiffs.

We ordered the case transferred from the St. Louis Court of Appeals after it reversed the judgment and ordered judgment entered for plaintiff against Anderson for $2,000.00 and for Anderson against Leiweke for that amount but in favor of Boyd and against Anderson on Anderson's third party claim. The principal issue is whether plaintiffs are entitled to recover from Anderson the value of the logs at the time Anderson took them from the island which was $7,250.00 or whether they can only recover their value as standing timber which was $2,000.00.

The timber involved was on an island in the Missouri River. Plaintiffs claimed under Henry J. Mades who had a patent (in 1923) from St. Charles County for an island containing 176.29 acres. Some of this island was washed away when the river channel changed but by accretion other land was added to it until it was joined to another larger island downstream called Howell Island owned by Leiweke. There was a steep bank all along the upper end of Howell Island between it and the accretion to Mades Island, with a depression there 10 to 30 feet wide. It was stipulated by all parties that 250,000 board feet, cut after January 1, 1956, was removed from land owned by plaintiffs by Anderson, after having been cut by Boyd under his contract with Leiweke and delivered to Anderson on the river bank. Anderson made the logs into rafts and had them floated to New Madrid by its towboats.

Anderson and Boyd claim estoppel and laches against plaintiffs but we agree with the trial court's finding against

that claim for the reasons hereinafter stated. Anderson and Boyd rely on Sligo Furnace Co. v. Hobart-Lee Tie Co., 153 Mo.App. 442, 446, 134 S.W. 585; Poole v. Roloff, Mo.App., 361 S.W.2d 340, 346; H. D. Williams Cooperage Co. v. United States, CCA 8th, 221 F. 234, 236; see also 34 Am.Jur. 577–579, Logs and Timber, Secs. 133–135, annotations; 161 A.L.R. 564–578; 69 A.L.R.2d 1344–1361. The rule stated by these authorities is that in an action for conversion, where trees are cut and removed by inadvertence or mistake, the proper measure of damages is the value of the timber in the trees cut and removed, technically known as stumpage value. However, if there was intentional or wilful cutting and removal, the owner is entitled to recover the value of his property as increased by transportation or labor, although the courts have differed as to the time and place finished products from the timber are to be valued. Likewise, an innocent purchaser from an inadvertent or good faith trespasser is liable only for the stumpage value or the timber cut and removed by the trespasser. Nevertheless, even though a purchaser from an intentional or wilful trespasser has acted in good faith, the purchaser is liable for the value of the timber at the time of the purchase or conversion by him. We, therefore, will review the evidence in the light of these principles.

It appears that Leiweke had made a contract for sale of the timber on Howell Island in 1954 and this contract was assigned to Boyd. Prior to that time (in 1923), the original patentee of Mades Island, Henry J. Mades, had conveyed a one-half interest therein to John L. Mades. Apparently both had died before Boyd began cutting operations. Plaintiffs, who lived in St. Charles County, were the heirs of Henry and most of the heirs of John lived in Illinois. A year after the timber was cut (May 1957), the heirs of John sold their interest to plaintiffs. Before any timber was cut (in 1955 according to plaintiffs) Boyd came to the store of Mr. and Mrs. Koelling two or three times inquiring about cutting timber on Mades Island but they did not give him permission to do so. Later Mr. Mayer, attorney for Leiweke, came there and talked to Mr. Koelling who told him of the claim of ownership by the Mades heirs and said there was to be a family meeting about it soon at Alton. Mr. Mayer made some investigation of records and on February 29, 1956 wrote Boyd, stating: "This is to advise you that I have been authorized to inform you to continue to cut timber on this island in accordance with your contract therefor. The Leiweke Estate, Inc. has always claimed title to all of this property, and will defend any attempted contest of its title. I am therefore further authorized to advise you that the Leiweke Estate, Inc. will defend any action involving the title to Howell's Island and will hold you harmless from any liability arising out of such action. This letter is being written to you at your request pursuant to your discussion with Mr. A. J. Leiweke yesterday."

Boyd began to cut timber on Mades Island in March but told Anderson's Vice President, Lee Crisler, who scaled the logs, to mark separately "as upper end" the record of the logs taken from Mades Island. Boyd told Crisler in May that the reason for the separate record was because of plaintiffs' claim of ownership and that the money for these logs would be held separately. Three of the plaintiffs went to the Island early in May, told the men there (including the foreman) that the land belonged to them and ordered them to stop cutting. Plaintiffs then went to a lawyer, Theodore Bruere, who contacted Mr. Mayer. After meeting with plaintiffs and Bruere, Mayer suggested that a suit be filed to determine title. Mr. Mayer said nothing came of this meeting but soon afterwards Boyd brought him a letter from William Waye, a lawyer employed by plaintiffs, which was dated May 22, 1956 and was as follows: "The Mades heirs were

in my office this morning and complained you were cutting a lot of timber off of their island in the Missouri River. This land apparently belongs to the Mades, and if what they tell me is true, you might be in for heavy penalties for your conduct in this matter. Before moving any such timber it will be necessary that this matter be cleared up and I trust that you will get in touch with me at an early date so that this matter can be cleared up." Mr. Mayer then had a conference with Mr. Waye and was informed that Mr. Waye was having title run by an abstract company. Mr. Mayer said it was understood that no more timber would be cut on the land claimed by plaintiffs but that processing of trees cut and lying on the ground would be completed and an escrow agreement set up to hold the money and Boyd was so informed. However, before the end of the year Mr. Waye died. In October 1956, some of the plaintiffs went to New Madrid to see Crisler and demanded payment. They also saw Boyd but were told that it was the responsibility of Leiweke to straighten this out. Leiweke did hold $1,877.21 (based on the "upper end" record) in its bank account until 1958 when it was distributed to its shareholders. This suit was brought in 1960. Leiweke had also sold Howell Island by that time and plaintiffs sold Mades Island to the purchaser of Howell Island.

The Court of Appeals relied on White v. Yawkey, 108 Ala. 270, 19 So. 360, 32 L.R.A. 199, quoting the following: "It is sufficient to say that the modern authorities are practically unanimous in holding that the rule of just compensation for the injury sustained, which is the ideal measure of actual damages, does not require the assessment, against an inadvertent trespasser, of the accession to the value of a chattel which his labor has produced, but that he is entitled to an abatement therefor from the enhanced value. * * * The same rule prevails when trover is brought against the unintentional trespasser's in-nocent vendee, who is treated as standing in the shoes of his vendor." However, the facts of that case were thus stated: "The material facts are that, within a year prior to the commencement of the suit, one Jack Brewer cut the pine logs from the timber lands belonging to the plaintiff, and sold them to defendants, to be delivered on the banks of Pea river, where he did in fact deliver them; and that neither he nor the defendants knew at the time the cutting was done that trespasses were being committed on the plaintiff's property, this fact not having been discovered until a survey was made, some time after the acts complained of had been performed. The defendants disposed of the logs, which were worth four cents per foot, at Pea river. These facts were established by the plaintiff's witness, and in regard to them there was no dispute."

The situation here seems very different to us. We cannot hold that Boyd was an "inadvertent trespasser." He knew of plaintiffs' claim before he cut any timber on their island. He talked to some of them about it and was told what they claimed. There was physical evidence (a high bank and a depression between the two tracts) to support their claim. Leiweke also knew of plaintiffs' claim from Boyd and had their attorney talk to plaintiffs; but told Boyd to go ahead on their contract, with the statement they would hold him harmless. They must have considered that plaintiffs could have some basis for their claim because from the start of cutting on that land, they had a separate record kept for the timber taken from plaintiffs' land. They deliberately decided to ignore plaintiffs' claim although at the trial they conceded its validity. Nor was Anderson a completely innocent purchaser because its Vice President was told to keep a separate record of this timber and before any logs were taken away from the island he knew the reason for the separate record was the claim of title made by

plaintiffs. The cutting on plaintiffs' land which began in March was not stopped when plaintiffs went to the island early in May and protested but only after they then employed a lawyer to stop it. Our conclusion is that this evidence was sufficient to support the findings of the trial court against the claims of laches and estoppel and to authorize his judgment for the value of the logs at the time they were taken from the island. Therefore, the judgment for plaintiffs against Anderson for $7,250.00 should be affirmed.

■ As to Anderson's third party petition, our view is that Boyd and Leiweke should be held liable to Anderson for the full amount of the judgment for plaintiffs. The evidence sufficiently shows a breach of implied warranty of title by Boyd, the measure of damages for which, under the facts of this case, would be the purchase price paid by Anderson. Speckard v. Mendenhall, Mo.App., 253 S.W. 166, 167, and cases cited; Ivester v. E. B. Jones Motor Co., Mo.App., 311 S.W.2d 109, 111; see also Schaefer v. Fulton Iron Works Co., Mo.App., 158 S.W.2d 452, 455; 46 Am. Jur. 578, Sales, Sec. 407; 77 C.J.S. Sales § 377, p. 1323. This breach was at the instigation and direction of Leiweke under an agreement by it to hold Boyd harmless for cutting the timber without regard to plaintiffs' claim.

The judgment for plaintiffs against Ralph Anderson Lumber Company, Inc., for $7,250.00 is affirmed. The judgment on the third party petition is reversed and remanded with directions to enter judgment for Ralph Anderson Lumber Company, Inc., for $7,250.00 against The Leiweke Estate, Inc., and N. J. Boyd, Jr., Administrator of the Estate of N. J. Boyd, Sr.

All concur and STONE, Special J., concurs.